G-holson, J.
As to the first point raised in this case (the jurisdiction of the court of common pleas),.we think that, whatever force it might have claimed, had it boon presented at the proper time, the plaintiff in error must be regarded as having waived it, by his failure to object, and proceeding to a trial upoh the merits. The case was one of which the court of common pleas would have had original jurisdiction. It was brought by the plaintiff in error into that court by appeal. He answered the petition, and proceeded to trial without objection. He can not be allowed thus to speculate on the chance of a favorable verdict, and then turn around and deny the jurisdiction of tho tribunal to the decision of which he had submitted his case. It was competent for that tribunal to assume jurisdiction by the consent of the parties, and the parties must be understood as having given such consent.
¥c can perceive.no error in the rejection of the evidence shown to have been offered by the first bill of exceptions. The test of the right of the plaintiff in error to deepen *the ford could not *402 ■depend upon the power required to propel the machinery of his mill. What might be necessary and convenient to propel the rna■chincry; might bo unreasonable as compared with the rights of others in thoir’use of adjoining land, or of a right of way acquired over the land of the owner of the mill. If the mill was erected before the road, and the water was used in the same manner at the time of its erection as at the time of the alleged obstruction, that might bo a defense; but if the flow of the water was changed, as by the elevation of a dam, the fact that the machinery of the mill required this change, which we understand was proposed to be proved, would furnish no reason for a consequent inconvenience and injury to third persons.
The second bill of exceptions discloses facts which present a question of some importance. It involves the relative rights of the plaintiff in error as owner of the land and mill, and of the defendant in error as representing the public, in the road and ford across the stream. It is conceded that, subject to the right of way of the public, the plaintiff in error was entitled to the benefit of the fall ■of water upon his land for the purposes of his mill, and might make any use of the same not inconsistent with the right of the public. Such is the general principle; but whether particular acts, which circumstances may show to be reasonable and convenient in the exercise of their respective rights, may or must be done by the plaintiff in error, or by the authorities having the control of the road on the part of the public, the general principle does not demónstrate.
In this case it appears that at an early- period in the settlement •of the country a mill was erected, a thing which has been deemed ■a public interest, and subsequently a road was laid out across the rstream which supplied the mill, and the mode of passage adopted was a ford. The very settlement and improvement of the country may have affected the quantity'of water flowing in the stream so as to render ^-necessary the elevation of the dam and the consequent occasional deepening of the ford.. Should the improvement ■in the mode of crossing keep pace with the improvement of the ■country, or have the public authorities the right to require that the mode of crossing first adopted shall be continued, to the destrucrtion, it may be, of the use of the water-power? If an improvement in the ford, or the erection of a bridge, would accommodate ithe public as well, or better, and preserve the use of the water *403 power, it seems reasonable that there should be some mode in which such a result might be accomplished.
It is claimed on behalf of the defendant in error that the right of the public is in this respect absolute and unqualified, and that the owner of the land and mill has no right, himself, to make the improvement, however reasonable and convenient, or to require it to be made by those representing the public. This, it is argued, results from the condemnation of the land for the right of way, or its dedication for that purpose, and that any such consequence must be considered as having been in view at the time of the condemnation or dedication. The owner of the land, it is claimed, has either received, or might have received, and has waived payment for a damage and injury of this description.
Practically, we suppose difficulties of this kind very rarely occur. If, for example, the crossing of a stream be originally by a ford, .■and the convenience of the public demands a bridge, and 'one is ■constructed by the proper authority, and then a corresponding improvement is made by the erection of a mill, and in such use of the water the stream is deepened at the point where there was originally a ford, it would hardly be regarded as an obstruction, or any interference with the right of the public. The bridge becomes a highway, and according to the rule of the common law it would become the duty of the county to keep it up and in repair. It would be the mode of exercising *the right of way adopted by the public, and the deepening of the stream would be no interference.
Suppose the progress of improvement was greater in the other •direction, and the owner of the land desired to use his fall of water, and to accomplish this purpose, the erection of a bridge, as a mode of passage across the stream, became necessary, might he erect it, at his own cost, and offer it to the public as the mode of exercising the right of way, instead of the ford ? It appears to be the rule of the common law, as shown by numerous authorities, that the circumstances of a case may be such as to make the exercise of such a right, on the part of the owner of the water-power, reasonable and proper, and one which it would not be proper for those representing the public, under all circumstances and in every case, to refuse to permit. The common law professes to be founded in reason, and certainly the mode of the exercise of many rights turns upon the inquiry — what is reasonable ? An inquiry for the answer to which *404 the common law has provided its peculiar and practical tribunal— a jury.
The purport of a number of authorities appears to be, that any person may erect a bridge over a stream crossing a public highway, if it be of public utility. If it be built in a slight and incommodious manner, it may be treated as a nuisance. If not so treated as a nuisance, and it bo really for the use and benefit of the public, then,
the charge of its repair is thrown on the county. 6 Mod. Cases, 400, page 307; 1 Salk. 359; 5 Burr, 2594; 2 Blackf. 685; 2 East, 342; 2 M. & S. 513; 3 B. & Adol. 147. The right of the owner of land, through which a road passes and crosses a stream of water, to build a bridge for the public, with a view to the use of his waterpower, appears to have been tacitly or expressly admitted in a number of cases. The only doubt or inquiry in such cases has been, whether the cost of the subsequent repair shall be borne by the mill-owner or the county. In the case of the King v. Inhabitants of 502] Kent, 2 M. & S. 513, where a person had erected a *mill and dam for his own profit, and thereby deepened the water of a ford, through which there was a public highway, but the passage through which was at times inconvenient to the public, and the miller erected a bridge over it, which the public used, it was held the county, and not the miller, was chargeable with the reparation. It is said in a case decided in New York: “ A bridge built by all individual over a public highway, that is useful to the public and generally used by them, or if in the course of time it has become useful, and is used by the public, must bo kept in repair by the public; as should a patriotic person build abridge, at his own expense, over a public highway, it would be more than unjust to compel him also to keep it in repair. Even should he derive a benefit or convenience individually, still, as it would be a great accommodation to the public, it ought to be repaired by the public.” Heacock v. Sherman, 14 Wend. 58-60. Similar remarks are made in a case in New Hampshire. State v. Campton, 2 New Hamp. 513. In another case in New York, where the distinction was recognized as to the question of a liability to repair, that the bridge was exclusively for the use of the miller, it being over a ditch which he had dug in the surface of the ground for a race-way, it was said : “The defendant certainly committed no trespass in digging the ditch. It was on his-own soil. The only right adverse to his was one to have a common highway for the purposes of travel. All the public could require *405 was that he should make and keep the road as good as it was before •he dug the ditch.” Dygert v. Schenck, 23 Wend. 446.
There seems to bo some conflict- in the authorities as to the cases in which, by the erection of a bridge, tho burden of its repair can be cast upon the public. The point has been regulated, in England, by a statute, which, by implication, admitting that a private person might build a bridge upon the public highway, provides that its repair shall not devolve upon the public, unless built under the supervision and direction of the proper officer. 1 Harr. *Dig. [503 2148; 3 B. & Adol. 147. So upon the construction of the road laws ■of a state, the same result, clearly provided in England, has been held to follow. Sampson v. Goochland Justices, 5 Gratt. 241. And we are not prepared to say that the same rule might not be required under our statutes regulating the construction of roads and bridges.
It would appear to be a proper inference, from the authorities which have been cited, that whore such a change, as has been stated, in the mode of crossing a stream becomes proper and reasonable, the owner of the water-power can not, by deepening the stream, devolve upon those having charge of the road the immediate necessity of building a bridge, however reasonable and proper it may bo that a bridge should be built at public expense. It was «o decided in a ease somewhat similar to the present. Monmouth v. Gardiner, 35 Maine, 247.
So far as the rights of adjoining proprietors of land through which a current of water flows may afford any analogy to the present case, it would appear that a temporary inconvenience or interruption which a reasonable use by one proprietor causes to its use by another, is not a ground of just complaint. What would be .such a reasonable use is necessarily, in most cases, a question of fact depending on the circumstances. These circumstances have been stated to be such as “ the width and depth of the bed, the volume of water, the fall, the previous usage, and the state of improvement in manufactures and arts.” 13 Met. 156-158. Of •course, the circumstances as between the owner of the land and the public having a right of way would differ; but it may be remarked that the state of improvement has called, and may call, for an application of the principle of a reasonable use on the part •of the public. If the construction of a railway and the planting in the soil of a telegraphic post are deemed reasonable, it might be ui’ged that an improvement in the use of water-power, requiring *406 a change in a fore] or the erection of *a bridge, might render such change or erection a reasonable and proper act on the part of the owner of the soil.
In 'view of these principles, and the authorities which have been!; cited, we feel justified in coming to the conclusion that the evidence disclosed in the second bill of exceptions ought to have been re ceived. If this evidence had satisfied the jury that a slight change-in the banks of the stream or in its bed would have enabled the-plaintiff in error to use his water-power and preserve his mill, and this change, both in being made and when made, would not interfere with the right of way, but obviate the former difficulty, the-inference might have been drawn that the refusal of the defendant, in error was unreasonable and capricious; and after such refusal, and during its continuance, tho jury might, with propriety, have-withheld damages of the character and description claimed. The-damages claimed and allowed were, at best, of an uncertain and indefinite nature. They were the damages sustained by the public. They must be very difficult to estimate or compute, resting really in the discretion of the jury.
It does not follow from this view of the evidence that the conduct of the defendant in error would afford an answer to a claim on the part of ány person for a special and particular damage resulting from the deepening of the ford. In what form permanent relief might be obtained by the plaintiff in error, and the right, if it should exist, to make the desired change might be enforced, we-are not now called on to decide. Indeed, we do not think a case presenting such a question is likely to arise; for we are inclined to-believe, in the language of the counsel for the plaintiff in error, that “ the real want of the public is a bridge across said creek at that ford;” and had the plaintiff in error proposed to build a safe and substantial bridge for the use of the public, it is not likely that, any objection would have been interposed.
As the judgment must be reversed for the error which has been pointed out, we do not think it necessary to extend *this-opinion by any comments on two other propositions which have been presented. As to them we find no error in the rulings of the-court. We think that the county road described in the petition was so established or dedicated, and it is immaterial which view is-taken, as to give to the public an undoubted .right of way, and that this right of way was not merged in the state road laid out over *407 the same ground. The two might well co-exist for the use and accommodation of different classes of the traveling public. The defendant in error represented and brought his action in behalf of those interested in the county road.
For the error in the rejection of evidence as shown in the second bill of exceptions, the judgment must bo reversed and the case remanded to the court of common pleas for another trial. - •
Brinkerhoee, C. T., and Scott, Sutliee, and Peck, JJ., concurred.